[Civ. No. 4852. Third Appellate District.—October 7, 1933.]

ANGELO GIALDINI et al., Respondents, v. A. M. RUSSELL et al., Appellants.

Charles Kasch for Appellants.

Taft & Spurr for Respondents.

THOMPSON, J.—From a judgment of $704.85 which was rendered in favor of the plaintiff as compensation for personal injuries sustained, together with damages to his machine as the result of an automobile collision, the defendants and cross-complainants have appealed. It is contended the judgment is not supported by the evidence and that the findings are in irreconcilable conflict. ▮ A motion was also made to this court to vacate the judgment on the ground that the visiting judge who tried the cause was without jurisdiction for the reason that he was not requested to preside as judge therein as required by the provisions of section 170 of the Code of Civil Procedure.

The complaint was filed February 27, 1931, in the Superior Court of Mendocino County, by M. H. Iversen, as attorney for the plaintiff. Before the cause was tried Mr. Iversen was appointed and qualified as judge of the Superior Court of that county. As former attorney of record in this case he was disqualified to try the cause as a judge of that court. (Sec. 170, Code Civ. Proc.) During the time the case was pending the late Honorable Thomas H. Selvage served as the duly elected and qualified judge of the Superior Court of Humboldt County. Pursuant to article VI, section 1a, subdivision (6) of the Constitution of California, the Chairman of the Judicial Council of California made a general assignment and authorization for the Honorable Thomas H. Selvage to sit and act as judge in the trial of cases in the Superior Court of Mendocino County for the period of one year from and after January 2, 1931. This assignment was made in the following language:

"January 2, 1931,
"No. 260–31

"To:

Hon. Thomas H. Selvage,
Judge of the Superior Court,
Humboldt County,
Eureka, California.

"Good cause appearing therefor, you are hereby assigned to sit as a Judge of the Superior Court in and for the county of Mendocino, beginning January 2nd to and including December 31st, 1931, and thereafter to act as such until all matters heard or partially heard or submitted to you therein

shall have been completed and disposed of by you, and also for the purpose of hearing and determining any motion after judgment in a case decided by you.

"This order you will have spread in full on the minutes of the court in which you are to sit.

"WILLIAM H. WASTE

"Chief Justice of the State of California
and Chairman of the Judicial Council.

"Attest:

"B. GRANT TAYLOR,

"Clerk of the Supreme Court
and Secretary of the Judicial Council.

"(Seal)"

Without further specific designation to try the cause, the Honorable Thomas H. Selvage was present in the Superior Court of Mendocino County on September 28, 1931, when the cause was regularly called upon the calendar, and proceeded, without objection, to try the case as judge of said court. The cause was tried, argued and submitted without objection to the jurisdiction of the judge. Findings were subsequently adopted and signed by him, and judgment for the plaintiff was accordingly rendered.

It is urged that the judgment is void for the reason that Judge Selvage was not duly authorized to try the cause in the manner provided by section 170 of the Code of Civil Procedure.

We are of the opinion the foregoing general assignment of Judge Selvage to try causes in Mendocino County, made by the Chief Justice of the State of California, as chairman of the Judicial Council, conferred jurisdiction upon him to try this cause. Article VI, section 1a, of the Constitution provides that:

"The judicial council shall from time to time:

. . . . . . . . . . .

"(6) Exercise such other functions as may be provided by law. The chairman shall seek to expedite judicial business and to equalize the work of the judges, and shall provide for the assignment of any judge to another court of a like or higher jurisdiction to assist a court or judge whose calendar is congested, to act for a judge who is disqualified or unable to act, or to sit and hold court where a vacancy in the office of judge has occurred."

The foregoing constitutional provision furnishes authority for the chairman of the judicial council to assign judges to sit in superior courts of counties other than those for which they are elected. This constitutional provision confers authority concurrent with the provisions of section 170 of the Code of Civil Procedure to designate another judge in the event of the disqualification of the resident judge.

Section 170 of the Code of Civil Procedure disqualifies a judge from trying a case when it appears that he has previously acted as an attorney for either party to the action. That section then specifies the procedure by means of which the disqualification of a judge may be established when the question is in controversy. In the present case Judge Iversen conceded his disqualification to try the cause. He did not attempt to try the action as a judge. The last-mentioned section of the code further provides:

"If it shall be determined after hearing that he [the resident judge] is disqualified, the action or proceeding shall be heard and determined by another judge not disqualified, who shall be agreed upon by the parties, or, in the event of their failing to agree, *appointed by the chairman of the judicial council.*"

The appellants contend that it was necessary for the disqualified judge to request the assignment of some judge to try the cause who had been "agreed upon by the parties". We are of the opinion the above-quoted portion of section 170, *supra*, may not be so construed. In the present case there was no agreement between the parties regarding the selection of a trial judge. The question of the disqualification of the trial judge did not arise until after the appeal had been perfected. There was no objection to the qualification of the Honorable Thomas H. Selvage to try the case. When the parties fail to agree upon a trial judge, as they did in this case, the above-quoted portion of the code section specifically authorizes the appointment "by the chairman of the judicial council". That is exactly what occurred in the present case.

It is unnecessary for the chairman of the Judicial Council to specify a particular case in which a visiting judge shall sit, in order to qualify him. The constitutional provision above referred to authorizes the assignment of a judge from another county "to assist a court or judge whose

calendar is congested, to act for a judge who is disqualified or unable to act''. Under the general assignment of Honorable Thomas H. Selvage, as above set out, he was qualified to sit as judge of the Superior Court of Mendocino County, at any time from January 2, 1931, to December 31, 1931, for the trial and determination of any and all actions or proceedings which might be assigned to him, including the case at bar. He was, therefore, not disqualified to try and determine this cause.

■ The appellants contend that the judgment is not supported by the evidence, chiefly for the reason that there is no substantial evidence showing that the driver of defendants' automobile was guilty of negligence in failing to give the arm signal required by section 130 of the California Vehicle Act, before attempting to turn his machine across the pathway of plaintiff's automobile. It is asserted the evidence in support of this alleged omission on the part of defendants' chauffeur is purely negative in its nature and inadequate to overcome the positive testimony of disinterested witnesses to the contrary.

The collision occurred between the Ford automobile of the plaintiff and the motor vehicle ambulance belonging to the defendants, in broad daylight, on an open, unobstructed paved street in the city of Ukiah. The plaintiff was riding northerly in his machine, which was being operated with his consent by his minor son, Pete Gialdini. The defendants' ambulance was approaching along the same street from the direction opposite to that in which the plaintiff was proceeding. There was no other traffic in that vicinity. The plaintiff claimed, and, in effect, the court found that the defendants' automobile when in close proximity suddenly and without warning turned across the highway in front of plaintiff's machine so that it was impossible for the plaintiff to avoid the collision which followed. The driver of the defendants' ambulance was in plain view of both the plaintiff and his son for a considerable time before the accident occurred. They had an unobstructed view of the approaching ambulance and the driver thereof. Apparently they had an opportunity to see and absolutely know whether the driver of the approaching machine did or did not execute the arm signal before he turned his vehicle across their pathway. Pete Gialdini testified in that regard: ''Q. When

it [the ambulance] turned in front of you how far did you travel before you hit the hearse? A. Just about twenty feet, I guess. Q. Did you endeavor to stop after you saw the hearse turn? A. Yes. Q. Did you endeavor to avoid hitting the hearse? A. Yes. . . . Did you see any hand signal before the hearse turned? A. No. . . . Q. Did you hear any horn blown? A. No. Q. You saw the hearse before it turned? A. Yes. Q. And you saw no hand signal? A. No. . . . Q. How fast were you traveling? A. About twenty miles an hour."

On cross-examination the same witness further testified regarding that subject: "Q. You say the driver didn't give any hand signal at all of his intention to turn? A. No. Q. How far was the ambulance from you when you first saw it? A. About Mill Street, . . . about two hundred feet northerly of the point of collision. . . . Q. And you saw the ambulance during all of the time it was coming down State Street? A. Yes. . . . Q. And at no time before the collision did you see a hand signal? A. No sir. Q. Were you looking? A. Yes. . . . Q. Did you see the ambulance when it first started to turn? A. Yes. Q. Well, how far away were you from it when it first began to turn? A. About twenty feet, I guess. . . . Q. Don't you know, as a matter of fact, that Mr. Russell had his hand out signalling a turn for two hundred feet before he made that turn? A. I didn't see any. Q. Were you looking for it? A. I saw the car, but not that. Q. If he had his hand out and you were looking would you have seen it? A. I should have. Q. There was nothing to obstruct your vision? A. No. Q. Will you swear that the hand signal was not out and that you were looking in the direction of the ambulance? A. Yes."

Regarding the alleged absence of an arm signal on the part of defendants' driver of the ambulance, the plaintiff testified to substantially the same evidence as that which was given by his son as above quoted.

Although the foregoing evidence may be said to be negative in its nature, it nevertheless furnishes substantial proof of an absence of an arm signal on the part of the driver of defendants' vehicle, sufficient to support the finding of the court to the effect that the defendant was guilty of negligence in failing to give the arm signal required by the pro-

visions of section 130 of the California Vehicle Act, which omission became the proximate cause of the collision. The question of the credibility of the witnesses and the weight of their evidence upon that subject were solely problems for the determination of the jury. ■ The question as to whether the plaintiff was guilty of contributory negligence in that regard, or whether the sudden turning of the defendants' ambulance across the pathway of the plaintiff's machine, without warning, so surprised him that he was unable to avoid the collision, are also questions for the jury to decide. From the record in this case, we are unable to say, as matters of law, either that the plaintiff was guilty of contributory negligence or that the defendants were not guilty of negligence which proximately contributed to the accident.

Regarding the weight and sufficiency of negative testimony to establish the failure to give the statutory signals which are required to be given upon the approach of a railway train to a crossing, it is said in *Thompson* v. *Los Angeles etc. Ry. Co.,* 165 Cal. 748, 752 [134 Pac. 709, 711]:

"But we think it must be held that there was enough in the evidence to justify the jury in finding that the motorman was negligent in not giving proper warning by bell or whistle, of his approach. It is true that the only evidence that he did not give such warning was negative, consisting of the statements of the people in the automobile that they heard no signal. But, if they were situated, as they undoubtedly were, so as to have been able to hear a bell or whistle sounded from the motor car, their failure to hear is some evidence that no such signal was given. (1 Wigmore on Evidence, sec. 664; *Stotler* v. *Chicago & A. Ry. Co.,* 200 Mo. 107 [98 S. W. 509]; *Cotton* v. *Willmar etc. Ry. Co.,* 99 Minn. 366 [116 Am. St. Rep. 422, 9 Ann. Cas. 935, 8 L. R. A. (N. S.) 643, 109 N. W. 835].) That there was positive testimony to the contrary does not conclusively establish that a warning was given. It creates merely a conflict of testimony, which is finally resolved, so far as this court is concerned, by the verdict of the jury. This circumstance alone supports the finding of negligence."

This is the uniform rule respecting negative testimony established by an unbroken line of California authorities. The findings of the court in the present case, respecting the

proof of negligence on the part of the defendants and the absence of contributory negligence on the part of the plaintiff or his son, are adequately supported by the evidence.

The findings are not in irreconcilable conflict. In both the answer of the defendants and in their cross-complaint it is alleged that the plaintiff was the owner of the machine in which he was riding at the time of the accident, and that it was then being driven by his son Pete Gialdini, as his agent, and that they were then engaged in a joint enterprise. It was further alleged the defendants were guilty of no negligence, and upon the contrary, that the collision resulted solely from the negligence of the plaintiff and his son. It is contended the language of finding number 10 which was adopted by the court is in irreconcilable conflict since the first portion thereof affirmatively declares that neither the plaintiff nor his son was guilty of negligence, and, upon the contrary, in an effort to negative the charges of carelessness on their part which are alleged in the answer and cross-complaint, the court found, in the latter portion of finding number 10, that they were guilty of negligence. The alleged contradictory portion of this finding is in the following language:

"That it is not true that at the time and place set forth in said complaint, the said Pete Gialdini failed to use due or any care or caution for the protection of his own safety, and that the said Pete Gialdini at said time carelessly and/or negligently operated the said Ford automobile of plaintiff, and that the acts of the said Pete Gialdini directly or proximately contributed to and/or caused the damages sustained by the plaintiff Angelo Gialdini."

The language of this latter portion of the tenth finding is not as clear as it might have been. However, it may be reasonably construed as a *seriatim* denial of each of the alleged charges of negligence against the plaintiff and his son as they appear in the answer and cross-complaint. Findings should be construed so as to uphold rather than to defeat a judgment, if reasonably possible. (*Ensele* v. *Jolley*, 188 Cal. 297, 303 [204 Pac. 1085]; *Metcalf* v. *Hill*, 97 Cal. App. 597 [275 Pac. 994].) It is apparent that in attempting to refute each of the specific charges of negligence against the plaintiff and his son, the chal-

lenged finding inadvertently omitted to repeat the words "it is not true" as applied to the last two denials therein contained. It is apparent from a ·reading of this entire finding that the above-quoted language is understood and intended to have been used. It is reasonable to construe the challenged finding which was adopted by the court in the sense conveyed by the following quotation to which the language inclosed in parentheses is added, to wit:

"That it is not true that at the time and place set forth in said complaint, the said Pete Gialdini failed to use due or any care or caution for the protection of his own safety, and (it is not true) that the said Pete Gialdini at said time carelessly and/or negligently operated the said Ford automobile of plaintiff, and (it is not true) that the acts of the said Pete Gialdini directly or proximately contributed to and/or caused the damages sustained by the plaintiff Angelo Gialdini."

Any other construction of the language which was employed in this finding, in view of the use of the alternative words "and/or," would render the finding uncertain, meaningless and absurd. We are therefore of the opinion the finding as it was adopted is not irreconcilable.

 Finally, it is contended there is an irreconcilable conflict between the challenged language in the last-mentioned finding and the first general finding to the effect that all of the allegations of the complaint and answer to the cross-complaint are true, "except as hereinafter set forth". The fourteenth finding declares that "All the allegations contained in paragraphs five and six of the cross-complaint . . . are true." Paragraphs five and six of the cross-complaint, last above referred to, merely determine that Pete Gialdini, the minor son of the plaintiff, was licensed to drive the motor vehicle with the consent of his father, and that he was actually driving the Ford automobile at the time of the accident as the agent of plaintiff and that they were then engaged in a common enterprise. This is not in conflict with the challenged finding, as we have heretofore construed it, which finds that neither the plaintiff nor his son was guilty of negligence which proximately contributed to the accident. All of the other material allegations of the answer and cross-complaint were found to be untrue.

We are of the opinion the findings may be reasonably reconciled in support of the judgment.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 1, 1933.