[Crim. No. 32178. Second Dist., Div. Five. Jan. 29, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE NAJERA, Defendant and Appellant.

**COUNSEL**

Corinne S. Shulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Juliet H. Swoboda, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ASHBY, J.**—By jury trial appellant was found guilty of first degree burglary. He appeals from the judgment (order granting probation) contending (1) that the trial judge had no jurisdiction and (2) that error was committed by the court and the prosecutor as to rulings and comments upon locating defense witnesses. Neither contention has merit.

This trial was heard by Municipal Court Judge Michael B. Rutberg, sitting by assignment by the Chief Justice of California and Chairperson of the Judicial Council. The assignment was pursuant to an order dated August 30, 1977, by the Chief Justice and Chairperson of the Judicial Council as follows: "The Honorable Judges of the Alhambra, Antelope, Beverly Hills, Burbank, Citrus, Compton, Culver, Downey, East Los Angeles, Glendale, Inglewood, Long Beach, Los Angeles, Los Cerritos, Malibu, Newhall, Pasadena, Pomona, Rio Hondo, Santa Anita, Santa Monica, South Bay, Southeast and Whittier Municipal Court Districts are hereby assigned as judges of the Superior Court of Los Angeles County from September 1, 1977 to December 31, 1977, and until they have completed and disposed of all causes and matters heard by them."

■ Appellant contends the Chief Justice and Chairperson of the Judicial Council does not have authority to make a "blanket" assignment of all the judges of the municipal court, and may only assign individual judges by name. This contention lacks merit.

Article VI, section 6 of the California Constitution provides: "The Chief Justice shall seek to expedite judicial business and to equalize the work of judges. The Chief Justice may provide for the assignment of any judge to another court but only with the judge's consent if the court is of lower jurisdiction." In addition, article VI, section 15, provides: "A judge eligible for municipal court service may be assigned by the Chief Justice to serve on any court."

■ The forerunner of article VI, section 6, was flexibly construed to effectuate its purposes to expedite judicial business and equalize the work of judges. (*People* v. *Ferguson,* 124 Cal.App. 221, 230-232 [12 P.2d 158, 960] (it need not be shown that there was actual congestion of the court at the time of the trial); *Gialdini* v. *Russell,* 134 Cal.App. 524, 526-529 [25 P.2d 845] (it is unnecessary that the assignment specify a particular case in which the assigned judge is to act).)

We are not persuaded by appellant's argument that the blanket assignment unlawfully delegates power to the presiding judges of the superior and municipal courts. Flexibility in administration on a day-to-day basis is needed and permitted by the constitutional provision. (*Gialdini* v. *Russell, supra*; *People* v. *Ferguson, supra.*) The express language of the provision is not limited as urged by appellant but rather is broad: the Chief Justice *"may provide for"* the assignment of any judge to another court. (Italics added.)

■ Appellant next argues that the prosecutor committed error in commenting upon appellant's failure to call certain logical witnesses for the defense, a woman named Juanita, Juanita's boyfriend, and a man named Moochie. This argument is without merit. The prosecution evidence indicated that sometime after 7 p.m. on the night of October 29, 1976, appellant and a companion burglarized the apartment of appellant's sister, Matilda Dominguez, and removed a stereo and television. Appellant, having visited the apartment often, was familiar with its contents. Appellant was also aware that the victim was not at home that night, but was at her mother's. A next door neighbor, Tina Hernandez, who was acquainted with appellant, observed appellant come to the residence in a vehicle driven by his companion and knock on the doors. Later, when Tina was going to bed, she heard footsteps, a tearing noise, and the sound of appellant's voice. She then observed appellant and his companion carrying something, appellant walking backwards and the companion walking forward. The window on the victim's rear door was found broken and appellant's fingerprints were lifted from the broken window.

Appellant presented an alibi defense. He was at a party given by Christine Hernandez (no relation to eyewitness Tina Hernandez). Her boyfriend, Louis Andretti, was nicknamed "Moochie." Appellant admitted that sometime after 7 or 7:30 p.m. he and Moochie left the party and went to the victim's residence to borrow money and found she was not at home. According to the defense, appellant and Moochie returned to the party by 8:15 and were there until 11:45 p.m., with the exception of a short trip to appellant's father's. After the party, appellant went to the Stage Top Bar looking for a woman named Juanita who was his cousin's girl friend. Not finding her there, he then went to the Canyon City Motel where he met Juanita and his cousin and spent the rest of the night with them.

It was proper for the prosecutor to comment upon the failure of the defense to call Juanita, the cousin or Moochie as witnesses. (See *People* v.

*Vargas,* 9 Cal.3d 470, 475 [108 Cal.Rptr. 15, 509 P.2d 959].) Moochie could have corroborated appellant's story as to his whereabouts between 7 and 11:45 p.m., and Juanita and the cousin could have corroborated appellant's story as to his whereabouts later that night, which was also a period in which the burglary could have been committed.[1]

The prosecutor did not commit error in arguing to the jury that Moochie was the other burglar, as there was ample evidence that he was. Moochie's physical description was consistent with the description of the other burglar by the eyewitness, Tina Hernandez. In addition, appellant admitted that he and Moochie went to the victim's apartment to see if she was home, and Tina Hernandez stated that the two people she saw carrying something away from the apartment were the same two she had seen come to the apartment earlier in the evening.

Appellant called a police officer to the stand and attempted to inquire as to whether the officer had information that Juanita was a witness who could account for appellant's presence and whether the officer had attempted to locate her. Upon objection based on relevance, defense counsel argued that the existence of Juanita would lend credibility to appellant's story. Objection was sustained. There is no basis in the record for appellant's assumption that, had the question been permitted, it would have shown that Juanita could not be located. Based on this false premise, appellant argues it was improper for the prosecutor to comment upon Juanita's absence. Appellant's analogy to *People* v. *Frohner,* 65 Cal.App.3d 94 [135 Cal.Rptr. 113], is thus not well taken. *Frohner* involved a confidential informant in a narcotics transaction, as to whom the prosecution had the duty to locate, and the prosecutor, aware that the informant could not be located, improperly commented upon the failure of the defense to call him. Here, the prosecution had no duty to locate Juanita, nor was there evidence that she could not be located by the defense. Nothing in the court's ruling prevented appellant from showing that he unsuccessfully looked for Juanita.

The judgment (order granting probation) is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

---

[1]Contrary to appellant's argument on appeal, there was evidence of the cousin's presence at the motel. Appellant testified that Juanita "came up with my cousin."