[No. E012800. Fourth Dist., Div. Two. Mar. 24, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN A. SWAIN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV through VII.

**COUNSEL**

Carmela F. Simoncini, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry J. T. Carlton and Adrianne S. Denault, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HOLLENHORST, Acting P. J.—**

I

Defendant, John Swain, appeals his conviction of second degree murder and raises the following issues: (1) his trial before a municipal court judge violated articles II, section 1, and VI, section 4 of the state Constitution, as well as the separation of powers doctrine; (2) the denial of his motion to represent himself violated his constitutional right to self-representation; (3) it was reversible error to fail to instruct the jury with CALJIC No. 2.83 (5th

ed. 1988[1]); (4) it was prejudicial error to refuse to instruct the jury on the lesser included offenses of voluntary and involuntary manslaughter; and (5) it was reversible error to give CALJIC No. 2.03. Finding each of these issues without merit, we affirm.

## II

### *Facts*

Karen Haywood's body was discovered in Silverwood Lake on October 4, 1991. She died as a result of 14 intentional blows to her skull with some sort of tool such as a hammer, tire iron, or other metal object having a circular edge. The investigation of Karen's death led the San Bernardino Sheriff's Department to suspect defendant was the assailant.

A witness had seen Karen with a man, who looked like defendant, on the afternoon of September 28, 1991, driving Karen around in a pickup truck. Defendant drove an old Chevy pickup truck. On that same afternoon, defendant had told his family that he was going on a picnic with a woman named Karen. He lived with his mother and stepfather.

Around 3 a.m., September 29, 1991, defendant's stepfather awoke to the sound of defendant taking a shower. Later that morning, defendant had washed the clothes he had been wearing on September 28 and left his sneakers in the planter. Defendant further washed the pickup truck, hosing down the interior floor. On the next day, defendant left a note for his parents that informed them that things just did not work out and thus he had to leave. He did not return until the end of the week.

When defendant learned that he was a suspect in Karen's death, he told his mother that he was being framed and that he had to leave town. His mother gave him some money and took him to the bus station. Finding the bus station closed, defendant returned home. There, he commented, "What if I hit her and I hit her and after the second hit I could tell she was dead? . . . What if I got so mad I beat her to death. . . . I had four years of anger built up inside me that I beat her to death. You see, no one saw me."

## III

### *Were Defendant's Constitutional Rights Violated by Having His Felony Charges Tried Before a Municipal Court Judge Sitting as Judge of the Superior Court?*

On December 29, 1992, the Chief Justice of the California Supreme Court issued a blanket assignment appointing Judge Roberta McPeters, along with

---

[1]All CALJIC instructions referred to are from the fifth edition unless otherwise noted.

23 other municipal court judges, to sit as superior court judges of San Bernardino County from January 1, 1993, to December 31, 1993, and until completion and disposition of all causes and matters heard pursuant to the assignment. Accordingly, trial of defendant's case was assigned to Judge McPeters and defendant moved to have his case transferred to the superior court. Judge McPeters denied defendant's request explaining, "The Supreme Court [C]hief [J]ustice of this state has the authority and has exercised that authority for quite some[]time to appoint judges to sit in Superior Court and act accordingly . . . ."

Defendant appeals from the denial of his motion to transfer claiming that (1) the blanket assignment by the Chief Justice violated our state Constitution and the separation of powers doctrine, and (2) any assignment of Judge McPeters pursuant to the trial court coordination plan (Gov. Code, §§ 68112 and 69753) was invalid because it was without defendant's consent.

Trial commenced on January 5, 1993. The Attorney General contends, and we agree, that Judge McPeters was acting pursuant to the blanket assignment of December 29, 1992, and not any trial court coordination plan. Thus, the only issue to be decided in this appeal is whether the blanket assignment violates our state Constitution and the separation of powers doctrine.[2] For the reasons stated below, we find that it does not.

Defendant argues that the blanket assignment violates article II, section 1[3] and article VI, section 4[4] of our state Constitution. In addition to these sections, he points to article VI, section 5 which authorizes only the Legislature to "prescribe" the jurisdiction of the municipal and justice courts, article VI, section 10 which vests in the superior courts original jurisdiction in all causes except those given by statute to other trial courts, and Penal Code section 1462 which grants municipal and justice courts jurisdiction over misdemeanors.

---

[2]Even if we were to consider whether an assignment pursuant to the trial court coordination plan is invalid, we note that Government Code section 68112 permits the use of blanket cross-assignments of judges to hear criminal cases within the jurisdiction of another court and section 69753 and California Rules of Court, rule 245.5(b) allows superior court criminal actions to be held at municipal and justice court locations upon the consent of the parties. Contrary to defendant's assertion, we do not find that these statutes or the rules of court contemplate the need for a defendant's consent to validate the judicial assignment, except for a change in location under rule 245.5(b). (*People* v. *Edwards* (1993) 17 Cal.App.4th 1248 [22 Cal.Rptr.2d 3].)

[3]This section provides that "All political power is inherent in the people. Government is instituted for their protection, security, and benefit, and they have the right to alter or reform it when the public good may require."

[4]This section provides, in relevant part, that, "In each county there is a superior court of one or more judges. The Legislature shall prescribe the number of judges . . . ."

While acknowledging that article VI, section 15 empowers the Chief Justice to provide for the assignment of any judge to another court, he argues that the language of that section is not susceptible to an interpretation that the Chief Justice is empowered to authorize all the judges of the municipal court to sit as superior court judges "until completion of all causes and matters." Instead, defendant suggests that this provision is limited to the assignment of "any" particular "judge" to hear a particular case. Any other interpretation "circumvents the need for the Legislature to 'prescribe' the number of judges, as well as the power of the people to elect superior court judges based upon the appropriate qualifications and experience." We disagree.

This same issue was addressed by our colleagues in the Second District in *People* v. *Najera* (1979) 88 Cal.App.3d 930 [152 Cal.Rptr. 124]. In *Najera*, the defendant challenged the Chief Justice's authority to make a "blanket" assignment of all the judges of the municipal court, asserting that such authority was limited to individual judges by name. The appellate court rejected defendant's challenge citing to article VI, sections 6 and 15 of the California Constitution. Section 6 provides that "[t]he Chief Justice shall seek to expedite judicial business and to equalize the work of judges. The Chief Justice may provide for the assignment of any judge to another court but only with the judge's consent if the court is of lower jurisdiction." Section 15 states that "[a] judge eligible for municipal court service may be assigned by the Chief Justice to serve on any court."

We agree with the Second District's finding that "[t]he forerunner of article VI, section 6, was flexibly construed to effectuate its purposes to expedite judicial business and equalize the work of judges. [Citations.] [¶] . . . Flexibility in administration on a day-to-day basis is needed and permitted by the constitutional provision. [Citations.] The express language of the provision is not limited as urged by [defendant] but rather is broad: the Chief Justice '*may provide for*' the assignment of any judge to another court." (*People* v. *Najera, supra,* 88 Cal.App.3d 930, 933-934; cf. *People* v. *Edwards, supra,* 17 Cal.App.4th 1248, 1256 and *Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 481-482 [159 Cal.Rptr. 494, 601 P.2d 1030].)

In this case, the language in the blanket assignment exemplifies the flexibility found in California Constitution, article VI, section 6. In addition to identifying each of the municipal court judges to be assigned to sit in the superior court, the assignment limits the period of time in which it will be effective. Although defendant has attempted to characterize the blanket

assignment as an indefinite blanket assignment, we find such characterization to be incorrect. The assignment states that it is effective for the calendar year of 1993 "and until completion and disposition of all causes and matters heard pursuant to this assignment." Such language takes into account the fact that some causes may continue past December 31, 1993. Thus, for those causes in progress, the municipal court judge may continue to hear the matter until its completion. Contrary to defendant's interpretation of this language, we find that the blanket assignment was for a limited duration.[5]

We also find that the blanket assignment accomplishes the purpose of expediting judicial business and equalizing the work of judges. The court, counsel, litigants, and the public (who pay for the justice system) have an interest in cost effective and expeditious process of court matters. Today's superior courts are faced with heavy case loads and the judges are chronically overburdened. Thus, litigants, defendants, and the public are prejudiced by delays in bringing criminal cases to trial. For example, delays causing a defendant to remain in custody affect his liberty interests, while the public unnecessarily may have to pay the added cost of incarceration. As time goes by, memories of witnesses fade. Therefore, Penal Code section 1050, subdivision (a) provides that "criminal cases shall be given precedence over, and set for trial and heard without regard to the pendency of, any civil matters or proceedings." This leads to a frustration of the expeditious handling of civil cases. Accordingly, there is great need for flexibility in administration of the court system on a day-to-day basis. In our view, the blanket assignment is one tool which has and can be used to keep the system "running on time" by making additional judicial resources available to an overtaxed system.[6] Moreover, it facilitates a defendant's right to a speedy trial.

For the above reasons, we find that the use of the blanket assignment by the Chief Justice does not violate our state Constitution.

IV-VII*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[5]At oral argument, defendant requested that we take judicial notice of another blanket assignment issued by the Chief Justice for the 1994 calendar year. Such request is denied.

[6]We further note that retired municipal court judges have been assigned for years to hear serious and complicated superior court matters.

*See footnote, *ante*, page 499.

## VIII

### *Disposition*

The judgment is affirmed.[10]

McKinster, J., and Richli, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 15, 1995. Lucas, C. J., did not participate therein.

---

[10]After the United States Supreme Court granted certiorari in *Sandoval* v. *California* (1993) __ U.S. __ [125 L.Ed.2d 789, 114 S.Ct. 40] this court issued Misc. Order No. 93-1 in which we deemed criminal defendants who appealed convictions which resulted from a trial to have challenged the constitutionality of the definition of reasonable doubt contained in CALJIC No. 2.90. We reject that challenge in light of the Supreme Court's decision in *Victor* v. *Nebraska* (1994) 511 U.S. __ [127 L.Ed.2d 583 114 S.Ct. 1239]. (See also *People* v. *Freeman* (1994) 8 Cal.4th 450, 503 [34 Cal.Rptr.2d 558, 882 P.2d 249].)