TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 96-522 |
| of | : | |
| | : | July 24, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

JOHNNY DUANE MILES has requested this office to grant leave to sue in quo warranto upon the following:

ISSUE OF FACT OR LAW

May a municipal court judge be cross-assigned, in accordance with a trial court coordination plan approved by the Judicial Council, to hear a criminal case within the jurisdiction of the superior court?

CONCLUSION

A municipal court judge may be cross-assigned, in accordance with a trial court coordination plan approved by the Judicial Council, to hear a criminal case within the jurisdiction of the superior court.

PARTIES

JOHNNY DUANE MILES ("relator") contends that JOHN P. WADE, judge of the San Bernardino County Municipal Court District, is unlawfully exercising the office of judge of the San Bernardino County Superior Court.

MATERIAL FACTS

The County of San Bernardino has adopted and implemented a trial court coordination plan which has been approved by the Judicial Council. On December 27, 1995, certain judges of the San Bernardino County Municipal Court District, including Judge Wade, were cross-assigned by the Judicial Council to perform duties of the office of judge of the San Bernardino County Superior Court from January 2, 1996 to December 31, 1996, and until completion and disposition of all causes and matters heard pursuant to the assignment. Judge Wade has been assigned to hear a criminal case in which relator is the defendant and which is within the jurisdiction of the superior court. Judge Wade, who has never been elected to or appointed by the Governor to fill a vacancy in the superior court, has undertaken to perform the duties of the office of judge of the superior court pursuant to the assignment.

ANALYSIS

In deciding whether to grant leave to sue in the name of the People of the State of California, we consider initially whether there exists a substantial question of law or fact which requires judicial resolution, and if so, whether the filing of an action in the nature of quo warranto would serve the overall public interest. (78 Ops.Cal.Atty.Gen. 352, 353 (1995).)

California Constitution article VI, section 16, subdivision (b), provides that the judges of a superior court shall be elected in their counties "at general elections." Subdivision (c) thereof further provides that a superior court "vacancy shall be filled by election to a full term at the next general election after the January 1 following the vacancy, but the Governor shall appoint a person to fill the vacancy temporarily until the elected judge's term begins."

The Judicial Council is comprised of the Chief Justice of the Supreme Court, 14 other judges, and 6 members appointed by the State Bar and the Legislature, for a total of 21 members. (Cal. Const., art. VI, § 6.) As the chairperson of the Judicial Council, the Chief Justice seeks "to expedite judicial business and to equalize the work of judges, and may provide for the assignment of any judge to another court but only with the judge's consent if the court is of lower jurisdiction." (*Ibid*; see Gov. Code, §§ 68540-68549; 61 Ops.Cal.Atty.Gen. 314, 315 (1978).)[1] Finally, section 15 of article VI of the Constitution provides in part: "A judge eligible for municipal court service may be assigned by the Chief Justice to serve on any court."

The San Bernardino County trial court coordination plan at issue was adopted pursuant to section 68112, which provides in part:

"(a) . . . [C]ommencing in 1995 and every two years thereafter, courts in each county shall prepare . . . and submit a trial court coordination plan to the Judicial Council . . . for review and approval . . . . The plans shall . . . be designed to achieve maximum utilization of judicial and other resources to accomplish increased efficiency

---

[1] All section references hereafter are to the Government Code.

in court operations and increased service to the public. . . .   The Judicial Council may by rule exempt courts from the requirement of filing a new coordination plan for any year if all courts in the county have . . . adopted and implemented a coordination plan in which all courts share each other's work so that cases in all of the county's courts are substantially assigned without regard to whether a judge is on the superior court or the municipal court, and which provides for procedures that implement that sharing of work.

"(b) . . . The standards adopted by the Judicial Council shall include, but not be limited to, the following:  (1) The use of blanket cross-assignments allowing judges to hear civil, criminal, or other types of cases within the jurisdiction of another court . . . . (4) The assignment of civil, criminal, or other types of cases for hearing or trial, regardless of jurisdictional boundaries, to any available judicial officer.  (5) The assignment of any type of case to a judge for all purposes commencing with the filing of the case and regardless of jurisdictional boundaries . . . . (9) The unification of the trial courts within a county to the maximum extent permitted by the Constitution . . . ."

Do the provisions of section 68112 conflict with section 16 of article VI of the Constitution?  We conclude that they do not.

We first note that the validity of Judge Wade's assignment under the provisions of section 68112 is subject to challenge in a quo warranto proceeding.  (See *People* v. *Kwolek* (1995) 40 Cal.App.4th 1521, 1531.)  In *Kwolek*, as in the present case, a municipal court judge was appointed to the superior court by a blanket assignment for one calendar year and until completion and disposition of all causes and matters heard pursuant to the assignment.  Thereafter the assignment was renewed for an additional two consecutive years.  Nevertheless, the Court of Appeal drew a distinction between the *exercise of the power* of a judicial office and the *holding* of a judicial office:

"The fact that the assignment in this case was renewed twice to cover a total duration of three years did not transform the temporary assignment to permanent.  The observation made in *Bach* v. *McNelis* (1989) 207 Cal.App.3d 852, 871, is just as valid here: `[T]he mere fact that the assigned judge acts with the authority of an incumbent member of the court to which he is assigned does not transform him into an incumbent of that court; he is simply invested "with no other or different official relation to such courts than that held by the already regularly constituted members thereof . . . in order, in that relation, to exercise the judicial function." [Citation.]  By contrast, the sole means by which one can become a regularly constituted incumbent of a court of record is through election or appointment by the governor to a vacancy.  [Citation.] Assignment thus does not make a judge an incumbent, just as acting in the Governor's absence does not make the Lieutenant Governor the Governor of California.  The Lieutenant Governor becomes Governor only when a vacancy occurs in the office of Governor and a justice court judge becomes an incumbent of a higher court only when elected or appointed to that office.  [Citation.]  Though acting with the authority of the office, the judge does not on that account become the incumbent officeholder.  An assigned judge therefore need not satisfy the restrictions on the officeholder. . . . [A]n

assigned judge does not hold the office of the higher court; he merely exercises the power of the judicial position during the temporary period of assignment.' (Fn. omitted.)

"Responding to concerns raised by the length of the assignment, the *Bach* court continued: `It may be true, as argued by plaintiff, that an assignment might conceivably result in a "loophole" where an assigned judge may sit for substantial periods of time on a court of record without complying with the restrictions under which an incumbent judge would operate. But this lacuna in the judicial structure, if it may be said to exist, is one we believe was contemplated and countenanced by the Constitution on the assumption the temporary nature of assignments would inevitably render the service de minimis. As the Supreme Court noted long ago, it must be "taken for granted" that an assignment made in proper exercise of the wise discretion of the Chief Justice will not continue indefinitely. [Citation.]' (207 Cal.App.3d at p. 872.)" (*Id.*, at pp. 1530-1531.)

In our view, Judge Wade does not purport to hold the office of superior court judge as an incumbent, and the exercise of the power of that office under a trial court coordination plan pursuant to the express authority granted in section 68112 cannot be deemed unlawful. In this regard, the power of the Chief Justice to "provide for the assignment of any judge to another court" (Cal. Const., art. VI, § 6; see *People* v. *Najera* (1979) 88 Cal.App.3d 930, 934) may be accomplished, as provided in section 68112, by the Judicial Council's approval of a trial court coordination plan.

In any event, we take official notice that Judge Wade is performing the duties of a superior court judge under assignment by the Judicial Council. (Judicial Council assignment No. B-1654-96 (Dec. 27, 1995).) The validity of this assignment without regard to a trial court coordination plan is well established. (*People* v. *Swain* (1995) 33 Cal.App.4th 499, 503; *People* v. *Najera*, *supra*, 88 Cal.App.3d at 933.)

Inasmuch as we find no justiciable issue of fact or law, the application for leave to sue Judge Wade in an action in the nature of quo warranto is denied.

\* \* \* \* \*