UNITED STATES of America, Plaintiff–Appellee,

v.

Victor ALEXANDER, M.D., Defendant–Appellant.

No. 88–3143.

United States Court of Appeals, Fifth Circuit.

March 28, 1989.

Rehearing and Rehearing En Banc Denied April 27, 1989.

Before GEE, SMITH and DUHE, Circuit Judges.

GEE, Circuit Judge:

In 1986 the defendant was convicted of robbing a savings and loan association. That conviction was reversed on appeal.[1] *See United States v. Alexander*, 816 F.2d 164 (5th Cir.1987). The defendant was retried and again convicted in August 1987 despite his mistaken identity defense. The defendant appeals this second conviction contending that the district court committed reversible error in denying a defense motion for a continuance. The defendant also contends that the district court erred in precluding the introduction of allegedly crucial defense evidence. We conclude that the district court did not abuse its discretion in denying the defendant's request for a continuance. We further conclude that the district court's error, if any, in precluding the introduction of evidence was harmless. Consequently we affirm the defendant's conviction.

## I. *The Facts*

The retrial of the defendant was originally scheduled to begin on July 13, 1987. At the request of the defense the trial was continued until Monday, August 3. On Friday, July 31, at approximately 4:30 p.m. the defendant filed a motion to continue the trial a second time. As the basis for this motion the defendant alleged that he was physically unable to withstand the rigors of

1. The grounds for the appeal and reversal of the defendant's first conviction are irrelevant to this appeal.

a trial and that he was suffering from acute anxiety which lessened his ability to participate in the trial to the same extent that he had participated in the first trial, i.e., taking the stand in his own behalf to present alibi testimony. The government objected to any further continuance.

On Friday evening, the district court held an expedited hearing on the defendant's motion. The defense called no witness at the hearing. It did, however, submit a handwritten letter from an internist who had examined the defendant earlier in the day. This letter was largely illegible. According to defense counsel the letter stated that the defendant had acute pains in his left shoulder and had been prescribed heart medication. Defense counsel also alleged that the defendant's mental condition had worsened over the previous two weeks. Following the hearing the district court advised the parties that he would appoint a cardiologist to examine the defendant as soon as possible.

The court-appointed cardiologist, Dr. Lawrence O'Meallie testified on Saturday, August 1. Dr. Lawrence O'Meallie stated that he had examined the defendant and found no evidence of heart disease. Dr. Lawrence O'Meallie further testified that there was no reason why the defendant could not endure the trial. The defendant then testified regarding his physical and mental condition. Finally, the defendant's psychiatrist, Dr. Richard Richoux, testified. Dr. Richoux stated that "... I don't think that right now [the defendant] is capable of testifying in the same manner in which he would have been at the point of all of my previous in-person contacts with him." Dr. Richoux also testified, however, "I don't think [the defendant's] anxiety can be said to be the result of mental disease or defect."

Following the hearing the district court denied the defendant's motion to continue. The district court conceded that the medical testimony was that "the defendant is suffering acute anxiety that lessens his ability to participate as he participated in his last trial." The district court also noted, however, that "the defendant does not suffer from any mental defect or disease that renders him unable to understand the nature or consequences of the offense, or to assist counsel." In addition, after hearing the defendant testify the court stated:

It appears to me, having listened to the [defendant] for more than the past 30 minutes, that he is rational, thoughtful, coherent, calm, allert [sic], and I might say exceptionally allert [sic], very responsive, and his memory for detail seems to be extraordinary.

The district court, in denying the defendant's motion, weighed the impact of the defendant's lessened ability against the impact on the government and in the context of the Speedy Trial Act and concluded that the interest of justice required that the trial proceed as scheduled.

There was no physical evidence linking the defendant to the robbery. However, at trial several witnesses identified the defendant as the person who had robbed the savings and loan association. These witnesses had also identified the defendant as the robber two years earlier, when presented with a throw down (photographic) lineup by the FBI. Defense counsel cross-examined each of these witnesses regarding their identification of the defendant as the robber.

During the presentation of the defendant's case, after the close of the prosecution's case in chief, the defense attempted to introduce evidence of a second throw down allegedly conducted by the New Orleans police department before the FBI conducted its throw down. The defense alleged that this throw down had been shown to two of the three eye witnesses. According to the defense, all of the photographs used in the FBI throw down except that of the defendant had been used in the previous throw down. The defense contended that the use of the same photographs in both throw downs tainted the identification process.

The government moved to exclude the evidence on two grounds: First, the government contended that the evidence was unreliable; Second, the government contended that defense counsel's failure to

disclose the existence of the evidence until the fourth day of trial immediately prior to attempting to introduce the evidence violated the discovery order in the case. The district court excluded the evidence as a sanction for discovery abuse.

## II. *The Motion For Continuance*

■ The defendant contends that the district court's denial of his motion for a continuance constituted reversible error. The grant or denial of a continuance is generally within the sound discretion of the trial court and will be disturbed on appeal only for an abuse of that discretion. *United States v. Sahley*, 526 F.2d 913, 918 (5th Cir.1976). The defendant contends that in this case the district court's denial of a continuance deprived him of his right to call witnesses on his behalf, i.e., himself, and therefore constituted an abuse of the court's discretion. In support of this contention the defendant cites *United States v. Miller*, 513 F.2d 791 (5th Cir.1975).

In *Miller* we found no abuse of discretion in a trial court's denial of a continuance to obtain the testimony of an alibi witness. We implied, however, that denial of a continuance to obtain an alibi witness would be an abuse of the trial court's discretion if the moving party had met the required standards, stating that, in order to prevail on such a motion, the movant must demonstrate that

> due diligence has been exercised to obtain the attendance of the witness, that substantial favorable evidence would be tendered by the witness, that the witness is available and willing to testify, and that the denial of the continuance would materially prejudice the defendant.

*Id.* at 793 (citations omitted). According to the defendant he met the requirements of *Miller* and, therefore, the denial of his request for a continuance was an abuse of discretion because it deprived him of the testimony of an alibi witness.

Unfortunately for the defendant, his reliance on *Miller* is misplaced. The *Miller*

requirements come into play only if the denial of a continuance would prohibit the defendant from presenting the testimony of an alibi witness. In this case the denial of the continuance did not have that effect. The district court found, based on the testimony of the court-appointed cardiologist, that the defendant's physical condition would not preclude his participation in the trial. The district court further found, based on the testimony of the defendant's psychiatrist, that the defendant was suffering from acute anxiety, but that the defendant was not suffering from any disease or defect which would prevent him from assisting in his own defense or from testifying in his own behalf. This finding is supported by the evidence and is not clearly erroneous. The district court did not, therefore, abuse its discretion in denying the defendant's request for a continuance.

## III. *Exclusion Of Evidence*

■ At trial the defense attempted to introduce evidence of a throw down allegedly conducted by the New Orleans police department prior to the throw down conducted by the FBI.[2] The defense alleged that six of the seven photographs used in the FBI throw down were black and white copies of color photographs previously shown to two of three witnesses by the New Orleans police. The defense alleges that the only photograph in the FBI throw down which had not been previously considered and rejected by the witnesses was the photograph of the defendant. According to the defense, this fact tainted the identification process and supported the defendant's mistaken identity defense.

The defense admitted having possession of the photographs allegedly used in the New Orleans police throw down on the first day of trial. The defense did not, however, disclose the fact of the existence of the throw down or the defense's possession of it to the prosecution until the fourth day of trial, moments before attempting to introduce it into evidence. The prosecution

---

**2.** The prosecution denies that the New Orleans Police Department ever conducted a throw down. For purposes of this appeal, however, we will assume that a prior throw down was conducted.

objected to the introduction of the evidence on the ground that the defense had violated the discovery order in failing to disclose the evidence at the time that the defense gained possession of it. The prosecution also noted that the defense had the opportunity to cross-examine each of the state's eye witnesses and had failed to ask any of them about any throw down except that conducted by the FBI.

Rule 16(d)(2) of the Federal Rules of Criminal Procedure permits a court to prohibit the introduction of evidence not disclosed in compliance with Rule 16. "... [S]uch a sanction is not absolutely prohibited by the Compulsory Process Clause of the Sixth Amendment...." *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed. 2d 798 (1988). The defendant contends, however, that under the rule of *Taylor* that sanction is appropriate only if there is a pattern of discovery violations and wilful misconduct. He further contends that no such pattern or wilful misconduct was present in the instant case. Consequently, the defendant argues that a lesser sanction should have been imposed.

The Supreme Court's decision in *Taylor* gives us little guidance for determining when the preclusion sanction is permissible. Clearly it is permissible in egregious situations in which counsel deliberately and consistently violates discovery orders. The prosecution would have us hold that a preclusion sanction is permissible in any case in which the discovery abuse "was wilful and motivated by a desire to obtain a tactical advantage ..." *Id.* 108 S.Ct. at 655–56. Further, the prosecution would have us find that the abuse in this case was motivated by such a desire and that, therefore, preclusion was a permissible sanction. This we need not do as we find that the error, if any, in precluding the evidence in this case was harmless.

The defense contends that the New Orleans Police Department throw down was shown to two of the three employee eye witnesses who identified the defendant. Accepting this contention as true, the identification by the third witness remains untainted. The untainted witness is Ms. Ozio, who was the victim/teller in this robbery. She, of all the witnesses, had the best opportunity to observe the perpetrator of the robbery. There is neither claim nor evidence that Ms. Ozio was ever shown any throw down except that prepared by the FBI. Ms. Ozio identified the defendant as the robber both from his photograph in the throw down and from his in-court appearance. Under these circumstances we find that admitting the excluded evidence would not have altered the outcome of this trial.

The judgment of the district court is, therefore,

AFFIRMED.

Dorothy TAYLOR,
Defendant–Appellant.