[No. B064582. Second Dist., Div. Three. Aug. 13, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN LAMAR EDWARDS, Defendant and Appellant.

**COUNSEL**

Ronald P. Kaplan, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Pamela C. Hamanaka and Robert David Breton, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KLEIN, P. J.—Defendant and appellant Steven L. Edwards appeals the judgment entered following his conviction by jury of first degree burglary and two counts of grand theft. (Pen. Code, §§ 459, 460, subd. (a), 487, subd. 1.) Edwards admitted he had suffered a prior serious felony conviction within the meaning of Penal Code section 667, subdivision (a). The trial court sentenced Edwards to a term of nine years in state prison.

### SUMMARY STATEMENT

Edwards burglarized the apartment of his former lover, Neil G. (Neil), and Neil's roommate, Michael H. (Michael), while they were away for the weekend.

The matter was tried commencing October 7, 1991, in a courtroom usually occupied by a division of the Los Angeles Municipal Court and was presided over by a judge of the municipal court who had been assigned to sit as a judge of the superior court. Edwards contends the conviction must be reversed because, absent his consent to the location of the trial, the municipal court lacked jurisdiction to try the matter. (Gov. Code, § 69753; Cal. Rules of Court, rule 245.5(b).)[1] However, because the trial was conducted at a location designated by ordinance as appropriate for sessions of the superior court, Edwards's consent to the location of the trial was not needed.

Also in issue is the propriety of a discovery sanction by which the trial court precluded Edwards from introducing evidence relative to Edwards's claim that, as Neil's business partner, he had a right to the property taken from the apartment. We evaluate this sanction in light of California's reciprocal discovery statute (Pen. Code, §§ 1054-1054.7) and United States Supreme Court cases which permit a preclusion sanction where an accused

---

[1]All subsequent statutory references are to the Government Code unless otherwise specified.

Section 69753 provides, in part: "Notwithstanding any other provision of this code, the presiding or sole judge of a superior court may, . . . with the express consent of the parties in a criminal action, direct that a session of the court be held at any place in the county where a municipal or justice court regularly conducts sessions, if: [¶] (1) The judge presiding at the superior court session is a judge of a municipal or justice court or a retired judge assigned to serve as a superior court judge under Section 6 of Article VI of the Constitution."

California Rules of Court, rule 245.5(b), provides: "A criminal action may be heard at a municipal or justice court location pursuant to section 69753 of the Government Code if each party's written consent is filed. The defendant's consent shall state that the defendant has been advised of and understands the right to have the action heard at a regular superior court location and agrees that the matter may be heard at the specified municipal or justice court location."

intentionally violates a discovery order so as to gain a tactical advantage at trial. We conclude such a sanction may be imposed if (1) both the intentional violation of the discovery order and the improper intent are shown on the record and, (2) all other less restrictive sanctions which would achieve the purposes of discovery have been exhausted.

Although the instant sanction reviewed under the foregoing standard was improper, no reversible prejudice to Edwards appears. Accordingly, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Prosecution evidence.*

Viewed in accordance with the usual rule of appellate review (*People* v. *Thomas* (1992) 2 Cal.4th 489, 514 [7 Cal.Rptr.2d 199, 828 P.2d 101]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 575-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]), the evidence established that on May 24, 1991, Neil and Michael locked their apartment on Whitsett Avenue in North Hollywood and went to Palm Springs. As they were leaving, Edwards telephoned Neil and asked to retrieve property he had stored in Neil's garage. Neil told Edwards he would be out of town.

When Neil and Michael returned, they found the apartment had been broken into and the door to a locked bedroom had been forced open. Michael's microwave oven, coffee maker, phone answering machine, stereo equipment, wallet, credit cards and money were missing. Neil's TV, videocassette recorder, credit cards, and money were also missing.

Neil admitted he and Edwards previously had lived together at another residence and that the TV and videocassette recorder had been purchased while they lived there, but claimed he alone had paid for them. Neil's personal relationship with Edwards ended in April of 1989 and Neil moved into the Whitsett apartment in October of 1989.

On cross-examination, Edwards, who represented himself both at the preliminary hearing and at trial, asked Neil if he had commenced this action in order to "appropriate our property to your own use." Neil denied he had.

Michael testified he and Neil had lived together in the Whitsett apartment since April of 1990 and Edwards had not lived there during that time. None of Michael's property taken in the burglary ever had belonged to Edwards. Edwards had visited the Whitsett apartment and at one time had a key to one

of the locks on the door. However, Michael took Edwards's key in March of 1991 when he learned Edwards had been evicted from his residence and was staying in Neil's garage.

Darryl Moore lived in the apartment above Neil and Michael. About 2 a.m. on May 26, 1991, Moore saw Edwards outside the back door of Neil's apartment. Twenty minutes later Moore heard glass breaking. The next day he was aware of someone moving about in Neil's apartment.

In the early morning hours of May 27, 1991, Edwards awakened Donald Goodell at his residence and asked to spend the weekend at his home. Goodell reluctantly agreed and allowed Edwards to move items of personal property into Goodell's living room.

The following day Goodell discovered a check Edwards had given him a week earlier had bounced. The check was drawn on a business account and had Neil's telephone number on it. Goodell telephoned Neil and learned of the burglary. Neil's description of the property taken in the burglary matched the property Edwards had brought to Goodell's residence.

Neil received notice the check had bounced from the bank on May 24, 1991, the day he left for Palm Springs. After receiving this notice, Neil inspected his business checkbook and found three checks missing. Neil believed Edwards had taken the checks on May 15, 1991, while he was at the apartment to store property in the garage.

In a telephone conversation with Neil in July 1991, Edwards admitted he had taken the property and said he had discarded Michael's wallet.

2. *Defense evidence.*

Edwards produced a witness who testified he met Edwards at a party given by Neil to introduce Edwards as Neil's lover. The witness recalled Neil had a business which he and Edwards operated and that they had lived together in a furnished house.

3. *Edwards's theory of the case at trial.*

During closing argument, Edwards asserted he and Neil had accumulated property during their relationship and that he had a right to take the property from the apartment. Edwards stated the case involved the purported burglary of "what I've alleged to be my own place."

### CONTENTIONS

Edwards contends the trial court lacked jurisdiction to try this case and improperly excluded defense evidence.

## DISCUSSION

1. *Edwards was tried at a superior court location as required by section 69753.*

 a. *Background information.*

On October 7, 1991, this case was transferred for trial from the Northwest District of the Los Angeles Superior Court located at 6230 Sylmar Avenue in Van Nuys, across the street to Division 115 of the Los Angeles Judicial District of the Los Angeles Municipal Court located at the Van Nuys Branch at 14400 Erwin Street Mall, Van Nuys. The judge of the municipal court presiding in that division was assigned to sit as a judge of the Superior Court of Los Angeles County by a blanket assignment issued by the Chief Justice and Chairperson of the Judicial Council.[2]

Edwards contends the trial improperly was conducted at a municipal court location without his express written consent as required by section 69753 and California Rules of Court, rule 245.5(b). (See fn. 1, *ante*.)

The People concede Edwards's written consent to trial at a municipal court location was not obtained but point out he was tried before a judge of the superior court. They argue Edwards's submission to the authority of the court and the failure to object constituted a tantamount stipulation to the location of the trial. (See *In re Horton* (1991) 54 Cal.3d 82, 98-100 [284 Cal.Rptr. 305, 813 P.2d 1335] [defendant's participation in a death penalty trial, knowing the presiding judicial officer was a court commissioner, is tantamount to a stipulation to the authority of the commissioner to sit as a temporary judge].)

Because we conclude Edwards was tried at a location at which the superior court is authorized to hold sessions, his consent to the location of

---

[2]At the request of the People, this court has taken judicial notice of the Chief Justice's blanket assignment dated December 31, 1990, by which various named municipal court judges, including the instant trial judge, were assigned to sit as judges of the superior court from January 31, 1991, to December 31, 1991. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

Additionally, the parties have been notified this court proposes to, and hereby does, take judicial notice of the following facts which are not reasonably subject to dispute: (1) the Northwest District of the Los Angeles Superior Court is located at 6230 Sylmar Avenue in Van Nuys; (2) Division 115 of the Los Angeles Judicial District of the Los Angeles Municipal Court is located at the Van Nuys Branch at 14400 Erwin Street Mall, Van Nuys; and (3) these buildings essentially are adjacent to each other. (Evid. Code, §§ 452, subds. (g) and (h), 459, subd. (a).)

the trial was unnecessary.[3] Accordingly, we need not address whether Edwards's conduct constituted a tantamount stipulation to trial at a municipal court location.

 b. *Each of the Van Nuys county courts buildings is a superior court location.*

■ Initially, we note the assignment of municipal court judges to sit as judges of the superior court falls within the Chief Justice's constitutional authority "to expedite judicial business and to equalize the work of judges." (Cal. Const., art. VI, § 6; *People* v. *Najera* (1979) 88 Cal.App.3d 930, 933 [152 Cal.Rptr. 124].) Therefore, it is beyond dispute Edwards was tried by a judge of the superior court.

■ The defect in the proceedings that Edwards seeks to exploit on appeal is the failure to obtain his consent to the *location* of the trial.

This claim is without merit.

The Government Code provides each superior court shall hold its sessions at locations specified by ordinance adopted pursuant to section 69640 et seq., or at the county seat or other location provided by statute. (§ 69741.)

By ordinance adopted pursuant to sections 69641, 69643, and 69645, the Los Angeles County Board of Supervisors (the Board) divided the County of Los Angeles into 11 superior court districts. Section 69642 empowers the Board to designate one or more location within each district at which sessions of the superior court shall be held.

Pursuant thereto, the Board enacted ordinances specifying the location of sessions for each of the 11 superior court districts within the county. Generally, these ordinances direct that the sessions of the various districts of the Los Angeles Superior Court are to be held in a particular city within the county. For example, section 1.16.260 of the Los Angeles County Code (LACC) provides: "The sessions of the Superior Court in the West District shall be held in the city of Santa Monica."

With respect to the Northwest District, which is in issue here, the LACC provides in part: "The sessions of the Superior Court in the Northwest District shall be held in the city of Los Angeles at the Van Nuys County Courts Building." (LACC, § 1.16.270.)

---

[3]The parties did not propose or brief this possible resolution of Edwards's contention. They have been afforded the opportunity to file supplemental letter briefs pursuant to section 68081.

The term "Van Nuys County Courts Building" is not defined. However, both the superior and municipal court buildings in Van Nuys are county court buildings.

We reach this conclusion because, like the superior courts, the municipal and justice courts are regulated with respect to local matters by the respective county boards of supervisors. (*Whittaker* v. *Superior Court* (1968) 68 Cal.2d 357, 362 [66 Cal.Rptr. 710, 438 P.2d 358]; *County of Madera* v. *Superior Court* (1974) 39 Cal.App.3d 665, 669 [114 Cal.Rptr. 283]; § 71040.)

The California Constitution directs the Legislature to divide each county into municipal court districts and, pursuant to this directive, the Legislature created a judicial district embracing the City of Los Angeles (§ 72700) which is part of the Municipal Court of the County of Los Angeles (tit. 8, ch. 9, § 72600 et seq.).

Accordingly, the municipal, as well as the superior, courts located in the County of Los Angeles are county courts.

It follows that all of the court buildings in the County of Los Angeles in the area of the City of Los Angeles known as Van Nuys properly may be referred to as "Van Nuys County Court Buildings."[4] Indeed, each of these buildings is dedicated to County of Los Angeles court business, and the court buildings have been constructed virtually next to each other. To interpret "Van Nuys County Courts Building" in any other fashion also would be inconsistent with the broad citywide location the Board has specified for every other superior court district.

Section 69753 therefore applies only when a superior court matter is transferred to a location at which sessions of the municipal or justice court are authorized but sessions of the superior court are not. In Los Angeles County there are numerous such locations including the cities of Alhambra, Avalon, Bellflower, Beverly Hills, Culver City, Downey, El Monte, Huntington Park, Inglewood, Monrovia, Redondo Beach, South Gate, West Covina, and Whittier, and the unincorporated portions of the county known as East Los Angeles, and the towns of Malibu, Calabasas, and Valencia. (See LACC, §§ 1.20.270 through 1.20.500.)

It is therefore clear that, although Edwards was tried in a courtroom usually occupied by a division of the municipal court, the courtroom was

[4]Van Nuys is not a city but a descriptive name given to an area of the City of Los Angeles in the San Fernando Valley.

situated at a location the Board has designated as appropriate for sessions of the superior court. Section 69753 thus has no application here and Edwards's written consent to the location of the trial was not needed.

2. *The trial court's sanction for refusal to comply with its discovery order was improper but did not constitute reversible error.*

Edwards contends the trial court improperly sanctioned his failure to comply with discovery by excluding certain defense evidence. Specifically, Edwards claims the trial court erroneously prevented him from proving he and Neil had been partners in a business which was operated from Neil's apartment, the property taken from the apartment had belonged to the partnership, and Edwards had been entitled to possession of it.

a. *The alleged partnership.*

Edwards asserts the partnership defense is presaged by Neil's testimony at the preliminary hearing on July 23, 1991. At that hearing Neil admitted he and Edwards had operated a business together at a house they occupied before Neil moved into the Whitsett apartment and that in early 1989 he had signed an agreement drafted by Edwards respecting the business. The day after Neil signed the agreement Edwards terminated their personal relationship. Thereafter, Neil rented the Whitsett apartment and moved the business there.

Neil admitted that in early 1990 Edwards was still involved in the business, had a key to one of the two locks to the apartment and sometimes worked at the apartment when Neil was not there.

Edwards, appearing in propria persona at the preliminary hearing, asked Neil if he remembered the contract they signed that "stated all the property, the T.V., the V.C.R., the stereo, the phone, the beds, all of the things we bought for the business or for oursel[ves] was to be turned over to the business, that the individual who paid for the property would be reimbursed from the business?" Neil admitted they had entered into a written agreement but denied it had so stated; Neil testified the agreement covered only property "that was business related that could be used for the business— there is no way a V.C.R. and a T.V. could be used for the business I conduct."

At that juncture, Edwards advised the trial court he had the written agreement and it would show they had so agreed. However, Neil stated that in June of 1990 Edwards signed a second written agreement in which he

promised to leave Neil alone and acknowledged that the business belonged solely to Neil.

b. *Relevant statutory provisions and discovery proceedings.*

On June 5, 1990, the electorate adopted Proposition 115, the "Crime Victims Justice Reform Act," which, inter alia, mandated reciprocal discovery in criminal matters. (*Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356, 363 [285 Cal.Rptr. 231, 815 P.2d 304].) Pursuant to the discovery provisions enacted with the passage of Proposition 115, the People gave Edwards notice in the information they sought informal discovery pursuant to Penal Code sections 1054.3 and 1054.5, subdivision (b).[5]

This case trailed from day to day in a master calendar courtroom. During this time Edwards repeatedly sought dismissal of the charges based upon Neil's admission at the preliminary hearing of the existence of a partnership agreement between them. The trial court denied the motions.[6]

On October 1, 1991, Edwards sought discovery of numerous items from the People. On the following day the prosecutor asked Edwards to produce all documents he intended to use during trial including the partnership agreement. The trial court asked Edwards if he had those documents and Edwards responded, "The documents, contracts and so forth are housed with [Neil]." The trial court told Edwards to make copies of the documents he had and bring them to court the next day. Edwards stated he would.

On October 3, 1991, Edwards advised the trial court the partnership agreement was in the possession of his private investigator and Edwards would "have that for [the People] tomorrow." After a recess during which

---

[5]Penal Code section 1054.3, subdivision (b), requires a criminal defendant to disclose to the prosecutor: "Any real evidence which the defendant intends to offer in evidence at the trial."

Penal Code section 1054.5, subdivision (b), requires a party to make an informal request of opposing counsel for the desired materials and information and, if it is not provided within 15 days, the party seeking discovery may request a court order. Respecting the court order, subdivision (b) states: "Upon a showing that a party has not complied with Section . . . 1054.3 . . . , a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure."

Subdivision (c) of section 1054.5 states in part: "The court may prohibit the testimony of a witness pursuant to subdivision (b) only if all other sanctions have been exhausted."

[6]At the request of both parties this court has taken judicial notice of the transcripts of the proceedings in the trial court on September 26, 27, 30, and October 1, 2, 3 and 4, 1991, which were prepared at the request of the prosecutor and are found in the superior court file. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

Edwards and the prosecutor discussed possible disposition of the case without trial, Edwards again indicated he had the partnership agreement and it would be available the next day.

On October 4, 1991, Edwards again sought dismissal based upon the failure of the People to demonstrate a dissolution of the partnership. After the trial court denied the motion, Edwards stated the "partnership agreement was a lost document."

The trial court admonished Edwards, "If you don't turn it over today and you have it, you are not going to be able to use it at trial." Edwards responded Neil already had admitted the existence of a partnership. The trial court told Edwards, "[T]he point is you said you had a partnership agreement."

On October 7, 1991, the trial court once more asked Edwards to produce the partnership agreement and Edwards again stated the document had been lost. The trial court ruled Edwards could not introduce evidence of the partnership at trial because he had failed to comply with discovery. "We gave you a whole week every day."

When the matter was sent out for trial before a judge other than the one who had imposed the discovery sanction, the prosecutor referred the trial court to a minute order in the file which stated: "Court finds defendant has failed to comply with discovery re: . . . partnership therefore defendant is not to present any evidence re: partnership." After reading the minute order the trial court stated, "Okay. That ruling has been made. I'll stand by that ruling."

c. *Edwards's contentions.*

■ Edwards asserts: (1) the People failed to make an informal request for discovery and the information's nonspecific request did not comply with the statutory command the People ask opposing counsel for the desired materials; (2) the trial court did not make a discovery order before imposing sanctions; (3) the trial court improperly imposed the harshest possible sanction without considering lesser sanctions.

Edwards's first and second contentions clearly are without merit. The record demonstrates the People repeatedly sought discovery of the partnership agreement and the trial court directed Edwards to produce it. Moreover, by agreeing to produce the document, Edwards acquiesced in the trial court's order. Edwards therefore has waived any procedural objection which might

have been interposed prior to trial based upon the manner of the request or the trial court's issuance of a discovery order without first allowing Edwards 15 days to respond to informal discovery as required by section 1054.5, subdivision (b). (See *People* v. *Walker* (1991) 54 Cal.3d 1013, 1024 [1 Cal.Rptr.2d 902, 819 P.2d 861]; *Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261].)

 We next turn to the propriety of the sanction imposed by the trial court. Because preclusion sanctions implicate substantial federal constitutional rights, we look to the United States Supreme Court to establish the minimal requirements for imposition of such a sanction. Additionally, given the recent enactment of California's reciprocal discovery statutes, we consider decisions of the federal courts for guidance in this area.

 d. *Preclusion sanctions are drastic and must be used sparingly.*

Prior to 1988, there was a split in the federal courts as to whether a *preclusion sanction* could be imposed against a criminal defendant solely as a sanction to enforce discovery rules or orders. *United States* v. *Davis* (5th Cir. 1981) 639 F.2d 239, 242-243, held such a sanction could not be imposed. Other jurisdictions employed a balancing test. (See *Fendler* v. *Goldsmith* (9th Cir. 1983) 728 F.2d 1181, 1185-1187 and authority cited there.) ██ ██ *Davis,* and the commentators who adopted its view, reasoned a preclusion sanction (1) violated the fundamental right to present a defense, (2) was unrelated to the probative value of the evidence excluded, and (3) ignored the fact the sanction would be borne by a blameless criminal defendant rather than an incompetent or negligent attorney. (*Fendler* v. *Goldsmith, supra,* at pp. 1185-1187.)[7]

The United States Supreme Court settled this conflict in *Taylor* v. *Illinois, supra,* 484 U.S. 400, and upheld a preclusion sanction imposed against a criminal defendant. In *Taylor* the accused's counsel failed to disclose, pursuant to an Illinois notice-of-alibi statute, the name of a defense witness despite the fact counsel had been aware of the witness a week before trial and had added other names to the defense witness list shortly before trial. The undisclosed witness testified outside the presence of the jury he had seen the victim with weapons prior to the alleged offense and had warned the

---

[7]Because Edwards acted as his own attorney we need not consider the argument, advanced but rejected in *Taylor* v. *Illinois* (1988) 484 U.S. 400, 416 [98 L.Ed.2d 798, 815, 108 S.Ct. 646], that "it is unfair to visit the sins of the lawyer upon his [or her] client."

In this case "[a]ny harm to [Edwards] was self-inflicted; '[d]efendants who have elected self-representation may not thereafter seek reversal of their convictions on the ground that their own efforts were inadequate . . . .' [Citation.]" (*People* v. *Pinholster* (1992) 1 Cal.4th 865, 930 [4 Cal.Rptr.2d 765, 824 P.2d 571].)

defendant. However, on cross-examination the witness admitted he had not met the defendant until two years after the incident. The trial court expressed " 'a great deal of doubt . . . as to the veracity of' " the witness and excluded his testimony. (*Taylor* v. *Illinois, supra,* 484 U.S. at p. 405 [98 L.Ed.2d at p. 808].)

*Taylor* stated: "It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his [or her] favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance. [Fn. omitted.]" (*Taylor* v. *Illinois, supra,* 484 U.S. at pp. 414-415 [98 L.Ed.2d at p. 814].)

*Taylor* concluded the preclusion sanction was justified in that case because the accused deliberately had violated the discovery order to gain a tactical advantage and the proffered evidence likely had been fabricated. (*Taylor* v. *Illinois, supra,* 484 U.S. at p. 417 [98 L.Ed.2d at pp. 815-816].)

In *Michigan* v. *Lucas* (1991) 500 U.S. 145 [114 L.Ed.2d 205, 111 S.Ct. 1743], the United States Supreme Court again held a preclusion sanction may be imposed against a criminal defendant in a proper circumstance, but emphasized such cases are the exception rather than the rule. There, the accused in a rape prosecution failed to give statutorily required notice of his intent to introduce evidence of prior sexual contact between himself and the victim. As a discovery sanction, the trial court excluded the evidence at trial. The state appellate court reversed and adopted a per se rule that notice requirements could never be used to preclude evidence of past sexual conduct between a rape victim and a criminal defendant. The Supreme Court held the per se rule improper in that preclusion may be an acceptable sanction in some cases but noted that "[r]estrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.' [Citation.]" (*Michigan* v. *Lucas, supra,* 500 U.S. at p. __ [114 L.Ed.2d at p. 213].)

The high court also clarified *Taylor* and stated: "We did not hold in *Taylor* that preclusion is permissible every time a discovery rule is violated. Rather, we acknowledged that alternative sanctions would be 'adequate and appropriate in most cases.' [Citation.] We stated explicitly, however that there could be circumstances in which preclusion was justified because a less

severe penalty 'would perpetuate rather than limit the prejudice to the State and the harm to the adversary process.' [Citation.] *Taylor*, we concluded, was such a case. The trial court found Taylor's discovery violation amounted to '*willful misconduct*' and was designed to obtain '*a tactical advantage.*' [Citation.] Based on these findings, we determined that, '[r]egardless of whether prejudice to the prosecution could have been avoided' by a lesser penalty, 'the severest sanction [wa]s appropriate.' [Citation.]" (*Michigan* v. *Lucas, supra,* 500 U.S. at p. ___ [114 L.Ed.2d at p. 214], italics added.)

 We interpret these authorities to instruct that preclusion sanctions may be imposed against a criminal defendant only for the most egregious discovery abuse. Specifically, such sanctions should be reserved to those cases in which the record demonstrates a willful and deliberate violation which was motivated by a desire to obtain a tactical advantage at trial such as the plan to present fabricated testimony in *Taylor*.

e. *It is unclear whether Edwards willfully failed to comply with the discovery order in an effort to gain a tactical advantage at trial.*

 The record in this case does not demonstrate Edwards willfully and deliberately refused to produce the agreement. Although such an inference could be drawn, the record also reasonably could be interpreted so as to conclude that Edwards misrepresented possession of the agreement in order to enhance the possibility the trial court would grant his motions to dismiss the case based upon the existence of the partnership, or to gain some perceived leverage in plea bargain negotiations with the People. That is, Edwards may have been bluffing.

Additionally, it is possible Edwards had the document and lost it, or that he overestimated his ability to locate it.

The trial court did not make a factual finding as to what it believed had occurred or ask Edwards to explain the circumstances under which the agreement had been lost. Where the failure to comply with a discovery order is susceptible of contrary inferences on the issue of willfulness, and no attempt is made by the trial court to establish the facts underlying the violation, imposition of a preclusion sanction is an abuse of discretion.

Further, Edwards would have enjoyed a tactical advantage at trial only if he willfully had refused to produce the agreement. In that circumstance he would have been able to cross-examine Neil about the agreement without fear of being contradicted by the document itself. However, in none of the alternate explanations for the failure to produce the agreement did Edwards obtain any tactical advantage *at trial*.

In sum, the preclusion sanction was not supported by a showing of willful and deliberate discovery abuse calculated to obtain a tactical advantage at trial.

f. *Even where an intentional violation is shown, the discovery statute allows use of a preclusion sanction only as a last resort.*

Under federal law, the factors to be considered in determining the appropriate remedy for discovery violations include: (1) the effectiveness of less severe sanctions, (2) the impact of preclusion on the evidence at trial and the outcome of the case, (3) the extent of prosecutorial surprise or prejudice, and (4) whether the violation was willful. (*Taylor* v. *Illinois, supra,* 484 U.S. at p. 415, fn. 19 [98 L.Ed.2d at p. 814] citing *Fendler* v. *Goldsmith, supra,* 728 F.2d at pp. 1188-1190.)

Under California's reciprocal discovery scheme, there is an additional statutory requirement. Subdivision (c) of Penal Code section 1054.5 allows a trial court to preclude the testimony of a witness "*only* if all other sanctions have been exhausted." (Italics added.)

The sanction imposed by the trial court here did not preclude the entire testimony of any one witness. Rather, it precluded the testimony of *all* witnesses respecting the partnership theory of defense. The fact the trial court excluded an entire category of evidence rather than the testimony of a particular witness is inconsequential. Both sanctions infringe constitutionally protected rights of a criminal defendant. Indeed, the exclusion of an entire class of evidence in many instances is more offensive than the exclusion of the testimony of a witness. The former limits the accused's right to confront and cross-examine adverse witnesses as well as the right to right to compel the attendance of favorable witnesses and the right to produce evidence in one's own behalf. Either type of order is a preclusion sanction. Accordingly, the trial court's order had to comply with the dictate of Penal Code section 1054.5, subdivision (c). Thus, even if the facts of this case had demonstrated a willful violation of the trial court's discovery order, the trial court nonetheless had a statutory duty to exhaust all other sanctions before precluding the production of defense evidence.

Penal Code section 1054.5, subdivision (b), suggests several discovery sanctions a trial court may impose "including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure." The statutory duty to

exhaust all other sanctions requires a trial court to consider these endorsed sanctions before imposing a preclusion sanction.

Here, no such attempt was made.

### g. *Consideration of less restrictive alternatives.*

Consideration of the sanctions set forth in the statute reveals most would have been ineffective here. Immediate disclosure was not available and contempt proceedings would have had no effect on Edwards as he already was in custody and thus had no fear of incarceration. There was no suggestion a continuance would have allowed Edwards to locate the agreement and, in any event, Edwards refused to waive time for trial.

Similarly ineffective would have been an order preventing Edwards from introducing the written agreement at trial. If Edwards willfully had suppressed the agreement, an order precluding its introduction into evidence would have rewarded his failure to comply with discovery.

Finally, consistent with the last sentence of Penal Code section 1054.5, subdivision (b), the trial court might have allowed Edwards to present evidence relating to the partnership and thereafter instructed the jury Edwards had admitted possession of the partnership agreement but had failed to produce it when ordered to do so. This sanction would have served the object of discovery in that it would have allowed the People to argue Edwards had concealed the document because its terms were not favorable to him. At the same time, such a sanction would not have infringed Edwards's right to present a defense and would have permitted him to attempt to explain his failure to produce the agreement.

Moreover, in the event the record had demonstrated Edwards intentionally had concealed the agreement, the trial court could have further instructed the jury to infer the terms of the agreement were adverse to Edwards's position. (See, e.g., *People* v. *Zamora* (1980) 28 Cal.3d 88, 103 [167 Cal.Rptr. 573, 615 P.2d 1361].)

In light of the effectiveness of these less restrictive alternatives, the trial court's preclusion sanction was improper under California law even if the violation had been shown to be willful and perpetrated in order to gain a tactical advantage at trial. That is, even if a preclusion sanction would have been proper under *Taylor* v. *Illinois, supra,* 484 U. S. 400, and *Michigan* v. *Lucas, supra,* 114 L.Ed.2d 205, the trial court also had to comply with the California discovery scheme which permits preclusion "only if all other sanctions have been exhausted." (Pen. Code, § 1054.5, subd, (c).)

For all the foregoing reasons, the trial court's preclusion sanction was inappropriate.

h. *The error was harmless.*

Because the order precluding Edwards's partnership defense affected his substantial constitutional rights, we must determine whether the error was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d ˙1065]; *Fendler* v. *Goldsmith, supra,* 728 F.2d at p. 1190.) We conclude the sanction had no impact on the outcome of this case. (*U.S.* v. *Alexander* (5th Cir. 1989) 869 F.2d 808, 811-812.)

There was overwhelming evidence Edwards had burglarized the Whitsett apartment. Edwards's partnership defense was improbable and, even if believed, established a claim only to Neil's television and videocassette recorder. It would not have constituted a defense to the crimes arising out of the taking of Neil's credit cards and money or the theft of Michael's property.

Edwards's strongest defense was the assertion he and Neil had acquired the property taken in the burglary in the course of their personal relationship, a theory he advanced at trial. Because the jury rejected Edwards's claim of personal entitlement to the property, the weaker claim of a business-based right to the property similarly would have failed.

Moreover, Edwards's partnership defense would have been undermined by rebuttal evidence related to a second agreement signed in June of 1990, alluded to by Neil at the preliminary hearing, by which Edwards agreed to stay away from Neil and acknowledged the business was Neil's sole property.

Additionally, notwithstanding the trial court's order, evidence concerning the business relationship between Edwards and Neil came into the record on numerous occasions. This occurred primarily because the preclusion order had been made by the master calender judge and the trial court, although willing to abide by it, was not entirely comfortable with the prospect of precluding the presentation of defense evidence. Thus, the trial court uniformly erred in favor of allowing Edwards leeway in the questioning of witnesses.

For these reasons, we conclude beyond a reasonable doubt the trial court's discovery sanction did not affect the result of Edwards's trial.

## CONCLUSION

Edwards was tried at a location at which the superior court is authorized to conduct sessions and thus, his consent to the location of trial was not required. Although the trial court improperly sanctioned Edwards for failure to comply with its discovery order, the error was harmless.

## DISPOSITION

The judgment is affirmed.

Croskey, J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 10, 1993.