Filed 4/30/25  P. v. Robinson CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B335014 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA158517) |
| v. | |
| KEITH ROBINSON, | |
| Defendant and Appellant. | |

APPEAL from judgment of the Superior Court of Los Angeles County, John J. Lonergan, Judge.  Affirmed.

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David Madeo and Blake Armstrong, Deputies Attorney General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Keith Robinson of murdering Percy Wade while possessing a firearm as a convicted felon.  (Pen. Code, §§ 187, subd. (a), 29800, subd. (a)(1)).[1]  In this direct appeal, defendant contends the trial court erred by (1) denying his motion to exclude expert testimony on cell phone location data, or alternatively, to continue trial based on the prosecutor's late disclosure of the expert; and (2) admitting lay opinion testimony from an investigating officer about his "preliminary analysis" of the same cell phone data.

We disagree with both contentions and affirm.

## FACTUAL BACKGROUND

### A.      Prosecution Evidence

1.      *Discovery of Percy Wade's Body*

Around 5:00 a.m. on November 2, 2022, paramedics responded to a report of a suspected shooting at a housing complex in Los Angeles.  The paramedics found the body of Percy Wade on an outdoor walkway between two buildings, near a building canopy and bundle of burnt candles.

The lead investigator in the case, Los Angeles Police Department Detective Issac Fernandez, located an expended .9-millimeter bullet casing near Wade's body.  Wade died from a lethal gunshot wound to his chest.

2.      *Surveillance Footage of the Shooting*

A system of police surveillance cameras mounted in and around the housing complex captured the shooting at 2:01 a.m.,

---

[1]      Subsequent unspecified references to statutes are to the Penal Code.

as well as activities before and after the shooting. Several videos, which were played for the jury, established the following.

In the morning (9:06 a.m.) and late afternoon (5:38 p.m.) of November 1, 2022, Sammisha Williams and her boyfriend, later identified as defendant, were seen walking around the housing complex. Williams lived in an apartment in the complex. Williams positively identified herself and defendant in surveillance footage captured around 6:00 p.m. on November 1, 2022. Williams acknowledged the man she identified as defendant was wearing blue jean shorts with "white frayed fabric," multicolored Vans shoes, and a tan sweater with white lettering.

Around 12:00 a.m. on November 2, 2022, a man wearing the same shoes and clothing (blue jean shorts, multicolored shoes, and a tan sweater) stood with a group of three other men in a housing complex parking lot. Williams again identified defendant as the man wearing the tan sweater. To avoid the falling rain, defendant and the other men moved under a building canopy. Around 12:50 a.m., defendant left the area in a white sedan but returned just after 1:00 a.m. Twelve minutes later, surveillance cameras captured Wade riding his bicycle to the parking lot and then standing near defendant and his companions. Wade left the area momentarily before rejoining the group of men around 1:20 a.m.

At 1:59 a.m., Wade left the group of men, walked past a display of candles on the sidewalk memorializing defendant's deceased cousin, and stood near the opposite end of the complex building. Several minutes later, a man wearing a tan sweater, jean shorts, and multicolored shoes stepped away from the building canopy, walked towards Wade, and from a distance of

3

two-to-three feet, shot Wade in the chest.  The group of men fled the area after Wade fell to the ground.

Between 2:45 a.m. and 4:00 a.m., the shooter—wearing the same tan sweater, blue shorts, and multicolored shoes—returned to Wade's body and surrounding area, left, and returned several times.  Officers first arrived on the scene at 5:10 a.m.

3.     *Arrest and Investigation*

Defendant was arrested on November 12, 2022, at Williams's apartment.  Officers seized defendant's phone, a tan sweater matching the shooting suspect, and multicolored Vans shoes from the apartment.

At various times throughout trial, Williams identified defendant as the man in surveillance footage wearing the clothing seized from her home.  Williams had seen "a couple of people, but not a lot of people" wear the same sweater and similar shoes around the housing complex.  Williams did not see defendant between 6:00 p.m. on November 1, 2022, and 5:00 or 6:00 a.m. the following morning, when defendant tried to rouse her through an apartment window.

Officer Frances Coughlin, a senior lead officer assigned to the housing complex, also reviewed surveillance footage of the shooting.  Based on his 26 years of experience working at the complex, and having met defendant "numerous times," Officer Coughlin "strongly believe[d]" the shooter depicted in the footage was defendant.  Officer Coughlin noted a distinctive mole under one of defendant's right eyes.  In several photographs obtained from defendant's cell phone and posted to social media, defendant wore the same tan sweater worn by the shooter and could be seen with a distinctive mole on his face.

4

After obtaining defendant's cell phone data, Detective Fernandez conducted his own "preliminary analysis" using software from the Federal Bureau of Investigation. As that analysis confirmed the presence of defendant's phone "in the area of the crime scene during the date and time of Mr. Wade's murder," Detective Fernandez submitted the data to the FBI for review. Special Agent Jeffrey Bennett, an expert on cell phone activity, reviewed the records. Agent Bennett was one of 20 individuals in the United States who examined cell phone records on a full-time basis using "Timing Advance" metrics, which estimate both the location and timing of activity. He concluded that defendant's phone was in the vicinity of the crime scene at the time of the shooting.

## B. Defense Evidence

Defendant did not testify or call other witnesses to testify in his defense.

## PROCEDURAL BACKGROUND

An information charged defendant with first degree murder of Wade (§ 187, subd. (a)) by personally using a firearm (§ 12022.5, subd. (a)); and felon in possession of a firearm (§ 29800, subd. (a)(1)).

The matter proceeded to trial in October 2023. The jury convicted defendant as charged and found the firearm allegation true. Defendant was sentenced to an overall term of 35 years to life imprisonment.[2]

---

[2] Defendant was sentenced to 25 years to life for the murder of Wade, plus a consecutive 10-year term for personally using a firearm

## DISCUSSION

## A. Admission of Agent Bennett's Testimony

Defendant contends the trial court abused its discretion by denying his motion to exclude Agent Bennett's testimony, or alternatively, to continue trial due to the prosecutor's late expert designation, done on the first day of witness testimony. Defendant argues the midtrial disclosure violated the criminal discovery statutes, requiring either the exclusion of Agent Bennett's testimony or continuing trial.

### 1. *Relevant Background*

In a pre-trial motion in limine, defendant sought to exclude any expert or lay opinion on his cell phone activity, noting the absence of "reports from any cell phone experts." The prosecution's trial brief did not list Agent Bennett as a potential witness, and did not list cell phone analysis as anticipated trial evidence.[3]

On October 10, 2022, the day after empaneling the jury, the court held an evidentiary hearing at which the prosecutor submitted on defendant's motion to exclude cell phone data. The prosecutor affirmed she would not introduce "any cell phone evidence." The court struck defendant's motion.

Opening arguments and the prosecution's case-in-chief commenced on Monday, October 16, 2023. During a break in Williams's testimony the same day, the prosecutor told the court

and a stayed two-year term for possessing a firearm as a convicted felon (§ 654).

[3] The brief did list as anticipated evidence the "[u]se of Google maps for location information and plotting Longitude and Latitude."

she intended to introduce cell phone location evidence through Agent Bennett. The prosecutor stated she disclosed defendant's call records and Detective Fernandez's preliminary analysis during initial disclosures. The prosecutor also provided defense counsel Agent Bennett's draft report the previous Friday. Defense counsel objected to the proffered evidence, noting the prosecutor's change in position and the absence of any finalized report or resume of Agent Bennett. In reply, the prosecutor stated she did not previously intend to present cell phone evidence because she "didn't believe [she] had an expert." The prosecutor did not "have any knowledge about the records being submitted to the FBI" by Detective Fernandez, who "ha[d] been on leave until today . . . ."

The court acknowledged the late discovery, initial disclosure of raw call data, and the recent disclosure of Agent Bennett's draft report. Skeptical of Detective Fernandez's background to testify about cell phone location analysis, the court stated it would voir dire the detective before addressing the discovery issue. In the meantime, the court provided defense counsel a court-approved list of experts and suggested counsel prepare his own expert. In light of court scheduling, the court estimated the prosecutor would complete her case-in-chief in one week, giving "the defense a week to prepare for this sudden change in direction." The court believed one week would provide the defense adequate time "to get an expert if they wish and have rebuttal."

After holding voir dire of Detective Fernandez, the court found him unqualified to testify as an expert on cell phone analysis. Despite its ruling, the court reiterated one week would

7

be "enough time" for defense counsel to retain an expert to rebut Agent Bennett's evidence.

Outside the jury's presence the following morning, the court stated it "want[ed] to make it very clear for the record that I find . . . no purposeful intent on behalf of the People" for Agent Bennett's late discovery. After noting "the last option the court would use [ ] would be [ex]clusion of the evidence," the court again found one week to be sufficient time for defense counsel to retain an expert and decide "whether or not [he] wants to call his own expert." In response, defense counsel noted that one court-approved expert agreed to review the case within the limited time. At the end of witness testimony the same day, defense counsel confirmed receipt of Agent Bennett's final report.

Agent Bennett testified the following morning of trial on October 18, 2023.

At the close of the prosecution's case-in-chief on October 23, 2023, defense counsel moved for a mistrial based on Agent Bennett's testimony. During argument, counsel acknowledged he had retained an expert in time to prepare a report on the cell phone data. Defense counsel further admitted he had decided not to call the expert as a defense witness.

In denying the motion for mistrial, the court recognized defense counsel's ability to retain an expert who concurred with Agent Bennett's finding that defendant's cell phone was "somewhere between the two [cell phone] arcs . . . , but they also don't necessarily mean the phone was at the crime scene because . . . the phone records always overlap an area."[4] Despite

---

[4] When discussing the layout of cell phone towers and coverage areas, Agent Bennett testified that coverage areas with multiple cell towers "are somewhat overlapped." On cross-examination, Agent

its ruling, the court granted defendant's request to instruct the jury with CALCRIM No. 306 on the untimely disclosure of Agent Bennett's report.[5]

2.      *Governing Law on Criminal Discovery*

Under the criminal discovery statutes (§ 1054 et seq.), the prosecutor "must disclose to the defense relevant written, recorded, or reported statements 'of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case,' as well as 'the results of . . . scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial.' (§ 1054.1, subd. (f).)  Such disclosure generally must occur at least 30 days before trial.  (§ 1054.7.)  However, the[re is an exception]: 'If the material and information becomes known to, or comes into the possession of, a party *within 30 days of trial, disclosure shall be made immediately . . . .*' (*Ibid.,* italics added.)" (*People v. DePriest* (2007) 42 Cal.4th 1, 38 (*DePriest*); see § 1054.1 [disclosure limited to evidence "in the possession of the

---

Bennett agreed his analysis provided an "estimate," as defendant's phone "c[ould] be anywhere" within the timing advance band, which included the crime scene as well as "half a dozen to a dozen [other] buildings" and surrounding areas.

[5]      That instruction provided: "Both the People and the defense must disclose their evidence to the other side before trial, within the time limits set by law.  Failure to follow this rule may deny the other side the chance to produce all relevant evidence, to counter opposing evidence, or to receive a fair trial.  [¶]  An attorney for the People failed to disclose: Historical Cell Site Analysis Report by Agent Jeff Bennet[t] within the legal time period.  [¶]  In evaluating the weight and significance of that evidence, you may consider the effect, if any, of that late disclosure."

9

prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies"].)

"We generally review a trial court's ruling on matters regarding discovery under an abuse of discretion standard. [Citation.] In particular, 'a trial court may, in the exercise of its discretion, "consider a wide range of sanctions" in response to [a] violation of a discovery order.'" (*People v. Ayala* (2000) 23 Cal.4th 225, 299 (*Ayala*).) This includes orders for "immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure." (§ 1054.3, subd. (b).) "The court may prohibit the testimony of a witness . . . only if all other sanctions have been exhausted." (§ 1054.3, subd. (c).)

Violations of the criminal discovery statutes are "'subject to the harmless-error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836.' [Citation.]" (*People v. Anderson* (2018) 5 Cal.5th 372, 396 (*Anderson*).)

3.    *Analysis*

Defendant avers the trial erred in denying various motions—for continuances, exclusion of evidence, and mistrial—on the basis of late discovery. We disagree.

Defendant assumes the prosecutor's mid-trial disclosure of Agent Bennett and his report violated the relevant discovery statutes and pretrial evidentiary orders. The prosecutor gave defense counsel notice of Agent Bennett's initial analysis immediately after she acquired it. Defendant identifies nothing in the record to suggest this witness or his reports were

10

unreasonably delayed.  The court accepted the prosecutor's explanation and found "no purposeful intent" on her behalf.  On these facts, we "find no violation of the relevant statutes or the court's pretrial order." (*DePriest*, *supra*, 42 Cal.4th at p. 38; accord, *People v. Mora & Rangel* (2018) 5 Cal.5th 442, 463–468 (*Rangel*).)

Even assuming the disclosure violated the discovery statutes, the trial court acted within its discretion in fashioning its orders during trial.  The prosecution initially disclosed defendant's cell phone data.  After the prosecutor received Agent Bennett's draft report, she immediately disclosed it to defense counsel.  Based on the timing of witness testimony, defense counsel could—and did—retain an expert with enough time to present rebuttal evidence but declined to do so.  On these facts, "no obvious defense strategy [was] foreclosed by the late disclosure." (*Rangel*, *supra*, 5 Cal.5th at pp. 468–469.)  The court also instructed the jury with CALCRIM No. 306 to address any untimeliness in the disclosure of Agent Bennett's report.  We thus discern no abuse of discretion in the manner in which the trial court remedied the disclosure issue. (Accord, *DePriest*, *supra*, 42 Cal.4th at pp. 38–39; *People v. Edwards* (1993) 17 Cal.App.4th 1248, 1264.)

We likewise discern no prejudice.  Agent Bennett's report "was made available to the prosecutor and defense counsel as soon as it was discovered to have been unintentionally omitted, and the court admitted it with an admonition to the jury regarding its untimely disclosure." (*Rangel*, *supra*, 5 Cal.5th at p. 467.)  As discussed, the late disclosure may have given the trial court "cause for concern," but it did not "alter the outcome of the trial." (*Id.* at p. 468.)  To the extent Agent Bennett's opinion on

11

defendant's cell phone location was equivocal or inconclusive, defense counsel addressed it through effective cross-examination. (Accord, *ibid.*; see fn. 5, *ante*.)[6]

## B. Admission of Detective Fernandez's Preliminary Analysis

Despite finding Detective Fernandez unqualified to testify as an expert on cell phone location data, and over defense objection, the court allowed him to testify about his own "preliminary assessment" of data during his investigation. Detective Fernandez conducted this assessment using software provided by the FBI "to determine that [defendant's] phone was in the area of the crime scene during the date and time of [the] murder." Defendant contends the trial court erred in allowing this testimony.

"'A lay witness may offer opinion testimony if it is rationally based on the witness's perception and helpful to a clear understanding of the witness's testimony.' (*People v. Leon* (2015) 61 Cal.4th 569, 601; see Evid. Code, § 800.) 'By contrast, when a lay witness offers an opinion that goes beyond the facts the witness personally observed, it is held inadmissible.' (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1308.)" (*People v. Jones* (2017) 3 Cal.5th 583, 602.) This includes matters that "require particular

---

[6]     Without elaboration, defendant argues the admission of Agent Bennett's testimony violated due process by denying him the right to present a defense. "Such generalized statements are insufficient to demonstrate prejudice." (*People v. Verdugo* (2010) 50 Cal.4th 263, 281 282; see also *People v. Thompson* (2016) 1 Cal.5th 1043, 1103 [no explanation provided as to "how earlier disclosure" of testimony "would have made any difference" to defense strategy].)

scientific knowledge. . . ." (*People v. DeHoyos* (2013) 57 Cal.4th 79, 131 (*DeHoyos*).)

We conclude "it is unnecessary for us to consider whether the trial court abused its discretion in [its ruling] defendant challenges because even assuming error, we conclude any error was harmless." (*DeHoyos*, *supra*, 57 Cal.4th at p. 131; accord, *People v. Johnson* (2022) 12 Cal.5th 544, 611 (*Johnson*).)[7]

As discussed, Agent Bennett provided expert testimony on the same data and reached the same, albeit more specific, conclusion on defendant's cell phone location. (Accord, *DeHoyos*, *supra*, 57 Cal.4th at p. 131 ["the substance of all the [ ] testimony was before the jury either in slightly different forms . . . from other witnesses"].) When compared to the extensive testimony of Agent Bennett on the input of specific data and methodologies used to analyze it, Detective Fernandez's preliminary analysis was less significant. Other evidence placing defendant at the scene of the shooting was also overwhelming. Two witnesses who knew defendant identified him as the shooter. On these facts, we

---

[7]     Detective Fernandez's testimony was admitted without limitation. The Attorney General suggests the testimony was used not for the truth, but to describe his investigation and "deductive process." (Citing *People v. Dryden* (2021) 60 Cal.App.5th 1007, 1026 ["law enforcement officer's testimony regarding the focus of a criminal investigation is not considered inadmissible lay opinion"].) Neither party has furnished authority on this type of lay opinion, and we are unaware of any within this jurisdiction. (Compare *United States v. Feliciano* (11th Cir. 2008) 300 Fed.Appx.795, 801 [testimony by detective in construing cell phone data to determine the phone "was nowhere near the arrest location" proper lay opinion], with *United States v. Evans* (N.D. Ill. 2012) 892 F.Supp.2d 949, 954, fn. 5 [disagreeing with cases allowing "officers to provide lay opinion testimony as to . . . the use of call data records to determine the location of a cell phone"].)

find no reasonable probability the jury would have reached a more favorable verdict if Detective Fernandez's "preliminary analysis" testimony was excluded from trial.  (*Johnson*, *supra*, 12 Cal.5th at p. 611 [applying *Watson* standard to erroneous admission of evidence]; see *People v. Benavides* (2005) 35 Cal.4th 69, 91 ["generally, violations of state evidentiary rules do not rise to the level of federal constitutional error"].)

## DISPOSITION

The judgment is affirmed.


                                        MORI, J.

We concur:



ZUKIN, Acting P. J.



COLLINS, J.


14